**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRIC OF DELAWARE**

| | |
|---|---|
| ANDRE J. LOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| BEEBE MEDICAL CENTER, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

**The Parties and Background**

1.      Plaintiff Andre Lott ("Lott") is a resident of Sussex County, Delaware. Lott is an African-American male.

2.      Defendant Beebe Medical Center, Inc. ("Beebe"), is a Delaware Corporation whose registered agent is Beebe Medical Center located at 424 Savannah Road, Lewes, Delaware 19958. Upon information and belief, Beebe has more than 500 employees.

3.      Beebe operates the Tunnell Cancer Center ("Tunnell") located at 18947 John J. Williams Highway, Suite 10, Rehoboth Beach, Delaware.

**Jurisdiction & Venue**

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction over the related State law claims pursuant to 28 U.S.C. § 1367.

5.      Venue in this Court is proper under 28. U.S.C. § 1391, and this court has personal jurisdiction over the Defendant in this matter because the events giving rise to these claims occurred in this District.

1

## The Administrative Process

6. Lott filed a Charge of Discrimination with the United State Equal Employment Opportunity Commission's ("EEOC") Philadelphia Office on or about December 19, 2019, with a request that it be dual-filed with the Delaware Department of Labor Office of Anti-Discrimination ("DDOL").

7. The EEOC assigned Lott's Charge of Discrimination a Charge Number of 530-2019-05422.

8. In June 2020, the EEOC transferred the handling of Lott's Charge to the DDOL.

9. The DDOL assigned Lott's Charge of Discrimination a Charge Number of LOT061620.

10. On July 14, 2021, the DDOL issued a Final Determination and Right to Sue Letter. The letter indicated the DDOL investigated and found "reasonable cause to believe that an unlawful employment practice . . . occurred." Specifically, the DDOL found

   a. Lott "provided witness evidence that race and sex (male) discrimination was reported to his initial supervisor, Ms. Rahn".

   b. Lott "has met all the prima facia elements for Harassment and Constructive Discharge".

   c. Tunnell "created a hostile work environment when it failed to take prompt and corrective action when . . . [Lott] reported harassment based upon his perceived Race (Black/African American) which caused his constructive discharge."

11. The DDOL required a mandatory conciliation, which was originally scheduled for July 28, 2021. The conciliation was later re-scheduled for August 5, 2021. The conciliation was unsuccessful.

12. The EEOC adopted the findings of the DDOL, and it issued a Right to Sue Letter on September 9, 2021.

### Lott Is Hired & Identification of Co-Workers

13. Lott began working for Beebe as a full-time employee in November 2016 as a Staff Radiation Therapist at Tunnell. At that time, he was assigned two Preceptors, Alygia Blank, a white female ("Blank"), and Jackie McCabe, a white female ("McCabe").

14. At all times relevant, Blank and McCabe, along with Katie Cox ("Cox"), a white female, were lead therapists.

15. Above Blank, McCabe, and Cox in the chain of command was the Department Chief, Rosa Smith ("Smith"), a Hispanic female. In 2018, Smith was replaced by Scott Bunch ("Bunch"), a white male, as Department Chief.

16. Smith (and later Bunch) reported to Kristen Rahn ("Rahn"), a white female, who was the Manger for Radiation Oncology. Upon information and belief, the Department Manager had the ability to fire Lott.

17. Rahn reported to Cherri Rich ("Rich"), a white female, who was the Director of Operations. Upon information and belief, the Director of Operations had the ability to fire Lott.

18. In March 2019, Rahn left Beebe and was replaced by Ellen Huntington ("Huntington"), a white female, who was the new Manager for Radiation Oncology. By this time, Rich had also left her position as the Director of Operations, and she was replaced by Barry Hamp ("Hamp"), a white male.

19.     Despite this formal chain of command, Blank, McCabe, and Cox frequently went around Smith to complain about Lott directly to Rahn.

### Discrimination Against Lott Begins

20.     During Lott's first few days of employment, Lott asked his Preceptors Blank and McCabe various questions which they ignored.  When they did respond, it was in a demeaning manner.

21.     Early on, Lott learned Blank would target certain other employees.  Lott witnessed a conversation between Blank and Dineille Lloyd ("Lloyd"), a white female and another radiation therapist, after Lloyd had ended a telephone conversation with the department's receptionist, Candy.  Blank instructed Lloyd to write the name of the patient related to the incident down on paper because "the only way to get her out of here is to get her out of here now."  The "her" was Candy.  Once Blank walked away, Lloyd turned to Lott and stated "when [Blank] wants to get someone fired, she gets them fired.  She's good at it."  If these are not the exact words used by Lloyd, their words were similar to those marked in quotations herein.

22.     Lott then began to notice that his preceptors were not relaying critical information to him that was pertinent to his job duties.  Blank also became dismissive, insulting, and intellectually demeaning when speaking to Lott.  Lott reported this behavior to management.  Following his report to management, Lott noticed that he was being targeted by Blank, and she was getting other employees to assist her, just as Lott had witnessed her target Candy.

23.     Lott's probationary period was extended for two cycles of 90 days at the request of Blank and McCabe.  Because of this, Rahn had to put Lott on multiple plans of action.  But each time he would meet with the department manager, he was told that he was doing an outstanding job based upon his performance results and patient satisfaction.  Rahn noted that she had seen the

targeting behavior of the Preceptors aimed at others. Rahn apologized for the behavior of the Preceptors during the later phases of his probationary period.

24. Additionally, while employed by Beebe, Lott was subjected to, among other things:

   a. name calling, including being called "stupid" directly and indirectly;

   b. items being snatched from his hands in front of co-workers and patients;

   c. objects being thrown at him in response to discussions/disagreements he was having; and

   d. a co-worker posting more than 25 photographs of his face super-imposed on a baby through the department to embarrass him. When he would take one day down, McCabe told him to get over himself and there were more posters of him where those came from. The posters were replaced when he took them down.

25. Lott was given multiple write ups for non-valid reasons in the form of Safety Tracking Tools to put a permanent note in his file to reflect on his competency and performance.

26. Lead is used in connection with radiation therapy at Beebe. There is a "lead room". Lead is known to be a toxic chemical, and its use is regulated by federal law and Delaware law. Lott complained to Rahn and Smith about the unsafe conditions surrounding the use of the lead room because he believed these actions violated federal, state, or local laws and regulations. After Lott complained and continuing through his entire employment at Beebe, Blank and McCabe set up a fan in the doorway of the lead room causing the particles from the lead to disburse into the air of the room in which Lott was working.

27. In or about December 2017, Blank and McCabe were discussing, in Lott's presence, Blank's daughter's boyfriend, who was black. This discussion was prompted by the recent news of Michael Slager, a former police officer, who was sentenced on or about December 7, 2017, for

shooting an unarmed black man. Blank lamented that she and her husband had missed the opportunity to kill their daughter's black boyfriend. Blank said she and her husband talked about it frequently, and she wished her husband had killed the boyfriend when he had the chance because they would have gotten away with it. McCabe then walked past Lott and stated she wished she could shoot everyone in the building because they're all "liberals and lesbians." If these are not the exact words used by McCabe, their words were similar to those marked in quotations herein.

28. In or about July or August 2018, McCabe stated, "I fucking hate him" and "men are born idiots, I'm sorry. Just look at Andre." If these are not the exact words used by McCabe, their words were similar to those marked in quotations herein.

### Lott's Concerns Are Raised at a Meeting with Management

29. In or about September 2018, after putting up with Blank's behavior, Lott's requests for it to stop, and reporting her behavior to his supervisors on more than one occasion, Lott informed Blank that he would be requesting a meeting with her and the management staff. Blank told Lott that she had already requested a meeting. When Lott asked Rahn, the Department Manager, however, he was told that Blank had not requested such a meeting. Lott then requested a meeting be held.

30. Sometime following Lott's request for a meeting, Lloyd requested a meeting with the entire management staff. Apparently, Lloyd's request resulted in a meeting being scheduled for the entire department instead of a meeting with just Lott, Blank, and management.

31. Lott believed the meeting was going to be about employee morale generally. In hindsight, he realized that his supervisor, Smith, had tried to alert him as to the true purpose of the meeting.

32. A meeting was called with the entire management staff. During this meeting, Blank, Lloyd, McCabe, and Cox were aggressive and derogatory towards Lott's performance. The accusations made in this meeting were unfounded and/or subjective. At this meeting, Lott informed the management team of the behavior that was directed towards him from some of his co-workers. Lott described the hostility and anxiety he experienced daily. In the meeting, Lott told Hamp directly about his co-workers' behavior towards him that Lott had told other management staff who were present in the meeting.

33. Hamp adjourned the meeting. Hamp, Rahn, and Smith continued meeting.

34. Roughly one hour after the meeting with management staff, Lott received a text and phone call from Smith with an apology and confirmed Lott had her support. Smith further stated that she and his manager had been asked by the Director if they supported Lott's performance, to which they both confirmed they did.

35. Following the meeting, Lott met with Rahn, who continued to tell him that the Hamp, Rahn, and Smith were happy with him. Rahn told him that his good performance had been recognized previously by the Director and other management staff.

36. Lott met with his manager on several occasions regarding continued hostility and potential remedies, including intervention by Human Resources, but nothing changed. Lott was still subjected to the same hostile and demeaning environment, which, if anything, got worse. Lott was directed to keep doing his job, ignore his co-workers' behavior, and keep his head down.

### Lott is Passed Over for a Promotion

37. In November 2018, Rahn told him she was resigning. She told Lott that the Hamp and other management staff, Derick Johnson, an African-American male, Judith Ramirez, a Hispanic female, and Lisa Henderson, a white female, encouraged her to present to Lott the

opportunity of applying for her job in light of his performance. Lott met with Hamp and two of the three members of the management team, Derick Johnson and Judith Ramirez, who confirmed and assured Lott that they supported him. Lott therefore applied for the position.

38. Prior to the interview, Lott went and talked face-to-face to one of the physicians who would have input into the hiring decision, Dr. Brian Costleigh ("Costleigh"), a white male. Costleigh expressed a desire for the hiring of an outside candidate. Costleigh said there was no way he would support Lott getting the position. Costleigh said he was going to tell Hamp the same thing. Costleigh said that Beebe had tried "the same thing" in the IT Department with bad results. Lott was later informed Costleigh was referring to the hiring of a black manager.

39. Lott interviewed for the position sometime between December 2018 and February 2019. The Human Resources representative said Lott interviewed impressively.

40. Upon information and belief, input from the co-workers of whom Lott had complained was part of the decision not to hire Lott.

## The Discrimination Against Lott Continues

41. On one day in or about January 2019, McCabe told Lott that he was going to be fired. Later that day, Lloyd came up to Lott and started quoting lyrics from an Erykah Badu song, "Tyrone." Lloyd started by saying "You need to call Tyrone." But before the next line of the song, Lloyd said, "I like this part" or something similar. Lloyd then said, "n*gg*r, n*gg*r,[1] and tell him to come on help you get yo shit." If these are not the exact words used by Lloyd, their words were similar to those marked in quotations herein.

---

[1] Lloyd used the actual "n-word".

8

42. In January or February of 2019, Lloyd told McCabe that, "Andre is that big gorilla, you know, the one in Donkey Kong." If these are not the exact words used by Lloyd, their words were similar to those marked in quotations herein.

43. When Rahn left Beebe in mid-March 2019, Rahn's position was filled by Huntington. The hostile and aggressive actions of Lott's co-workers toward Lott increased. As a result, Lott had multiple meetings and conversations with Huntington where he expressed the harassment and targeting he had suffered previously and continued to suffer.

44. Approximately one month after Rahn resigned, Lott was working with Sharon Wilson ("Wilson"). Wilson told Lott that she was upset and reported to Huntington that she was being bullied by McCabe and they were treating her just like they treated Lott. When Lott asked what she meant by "the way they treated me", she replied, "running me around like a n*gg*r slave."[2] This comment was in reference to the treatment he received from Blank and McCabe, in that they would:

   a. Tell Lott to change and collect dirty linens even when the task was assigned to someone else;

   b. Tell Lott to clean up urination from soiled areas on treatment units assigned to therapists other than Lott;

   c. Tell Lott to clean up patients who had defecated on themselves who were assigned to therapists other than Lott on who were on treatment machines other than those assigned to Lott; and

   d. Routinely instruct Lott to do less meaningful and lowly tasks assigned to others.

---

[2] Wilson used the actual "n-word."

45. He spoke to the Department Chief Scott Bunch ("Bunch") about his encounter with Wilson.

46. Lott continuously reported his co-workers' behavior through May 2019.

47. In July 2019, Huntington informed Lott that the Human Resources Officer – Vice President, Catherine Halen ("Halen"), determined there was merit to his allegations. Upon information and belief, an internal investigation was conducted by Halen, from July 2019 through August 2019.

## Constructive Discharge & Damages

48. In light of the foregoing, Lott lost all moral and professional confidence in Beebe and its processes. Huntington appeared more interested in discrediting Lott and protecting Beebe. Through the final months of Lott's employment, Huntington caused further problems and anxiety in for Lott.

49. On July 22, 2019, Huntington disciplined Lott citing an alleged lack of focus during treatment activities, creating an opportunity incorrectly treat patients, and little or no communication with his colleagues.

50. On August 23, 2019, Lott was constructively discharged due to the constant hostile and discriminatory behavior he was experiencing.

51. Upon information and belief, Blank and McCabe are still working for Beebe. Blank was promoted. McCabe is working at a different Beebe location. Upon information and belief, Lloyd was terminated for time theft. Wilson retired.

52. Smith submitted a statement in the administrative proceeding that Rahn, Hamp, and Huntington were all aware of the harassment of Lott. At the latest, Hamp was made aware in the meeting in late 2018. She stated there were multiple meeting that occurred behind closed doors.

53. As a result of the conduct of Lott's co-workers and Beebe's mishandling of that conduct, Lott suffered the following damages:

    a. Lost wages, front and back;

    b. Medical expenses from treatment for the emotional distress he suffered;

    c. Emotional distress, including, but not limited to, post-traumatic stress disorder and anxiety;

    d. Humiliation and embarrassment at work and in the community;

    e. Disruption to his life; and

    f. Emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

### COUNT I – HOSTILE WORK ENVIRONMENT (RACE)

54. Plaintiff incorporates by reference all of the foregoing allegations as if they are stated herein.

55. Lott suffered intentional discrimination because of his race.

56. The discrimination Lott suffered was pervasive and regular.

57. The discrimination detrimentally affected Lott.

58. The discrimination Lott suffered would detrimentally affect a reasonable person in a similar situation.

59. Beebe failed to provide a reasonable avenue for Lott to complaint about his co-workers' harassment and mistreatment, and Beebe, through its agents and employees, knew or should have know of the harassment of Lott and failed to take prompt and appropriate remedial action.

60. As a result of the hostile work environment, Lott suffered the damages identified in Paragraph 52.

61. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and the State of Delaware, including, without limitation 19 Delaware Code § 710, *et seq.*

### COUNT II – HOSTILE WORK ENVIRONMENT (GENDER)

62. Plaintiff incorporates by reference all of the foregoing allegations as if they are stated herein.

63. Lott suffered intentional discrimination because of his gender.

64. The discrimination Lott suffered was pervasive and regular.

65. The discrimination detrimentally affected Lott.

66. The discrimination Lott suffered would detrimentally affect a reasonable person in a similar situation.

67. Beebe failed to provide a reasonable avenue for Lott to complaint about his co-workers' harassment and mistreatment, and Beebe, through its agents and employees, knew or should have known of the harassment of Lott and failed to take prompt and appropriate remedial action.

68. As a result of the hostile work environment, Lott suffered the damages identified in Paragraph 52.

69. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and the State of Delaware, including, without limitation 19 Delaware Code § 710, *et seq.*

## COUNT III – DISPARATE TREATMENT

70. Plaintiff incorporates by reference all of the foregoing allegations as if they are stated herein.

71. Lott, an African-American male, is part of a protected class.

72. Lott was encouraged to apply for Rahn's position based upon his qualifications and experience.

73. Despite his qualifications and experience, Lott was not promoted to the Department Manager position because of his race.

74. The position went to Huntington, a white female.

75. As a result of the failure to promote Lott, Lott suffered the damages identified in Paragraph 52.

76. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and the State of Delaware, including, without limitation 19 Delaware Code § 710, *et seq.*

## COUNT IV – RETALIATION

77. Plaintiff incorporates by reference all of the foregoing allegations as if they are stated herein.

78. Lott complained about the harassment of him by his co-workers to management staff.

79. Following his complaints and because of his complaints, Lott was subjected to a number of adverse employment actions, including, without limitation:

    a. Extended probation periods;

    b. Being placed on action plans;

      c.  Being written up;

      d.  Being passed over for a promotion; and

      e.  Being constructively discharged.

80.    As a result of the failure to promote Lott, Lott suffered the damages identified in Paragraph 52.

81.    This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and the State of Delaware, including, without limitation 19 Delaware Code § 710, *et seq.*

### COUNT V – CONSTRUCTIVE DISCHARGE

82.    Plaintiff incorporates by reference all of the foregoing allegations as if they are stated herein.

83.    The actions of Lott's co-workers and the lack of any meaningful response by Beebe to Lott's complaints of his co-workers' actions made Lott's working conditions so unpleasant and/or intolerable that a reasonable person in Lott's position would resign.

84.    Lott did, in fact, resign.

85.    As a result of the failure to promote Lott, Lott suffered the damages identified in Paragraph 52.

86.    This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and the State of Delaware, including, without limitation 19 Delaware Code § 710, *et seq.*

WHEREFORE Plaintiff Andre J. Lott respectfully requests this Court:

A.    Enter judgment in his favor and against Defendant Beebe Medical Center, Inc.;

B.    Award him back pay and front pay as he can prove;

    C.    Award him compensatory damages;

    D.    Award him special damages as he can prove;

    E.    Award him costs and attorneys' fees;

    F.    Award him pre- and post-judgment interest; and

    G.    Grant such other relief as the Court deems appropriate.

**JACOBS & CRUMPLAR, P.A.**

/s/ Patrick C. Gallagher
Patrick C. Gallagher, Esq. (DE Bar 5170)
Alexis N. Stombaugh, Esq. (DE Bar 6702)
28412 Dupont Blvd, Suite 104
Millsboro, DE 19966
(t) 302-934-1234
(f) 302-934-5143
pat@jcdelaw.com
*Attorneys for Plaintiff*

DATE: October 12, 2021